UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

---

ZENG YANG
7739 West Beckett Avenue
Milwaukee, WI 53218

    Plaintiff,

    v.                        Case No: 20-CV-1122

CENTENE MANAGEMENT
COMPANY LLC              **JURY TRIAL DEMANDED**
7700 Forsyth Boulevard
St. Louis, MO 63105-1807

    Defendant.

---

## COMPLAINT

---

COMES NOW the PLAINTIFF, Zeng Yang, by her counsel, HEINS EMPLOYMENT LAW PRACTICE LLC, by Attorney Janet L. Heins, as and for a claim against the Defendant, and alleges and shows to the court as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this case involves federal questions under the Family and Medical Leave Act ("FMLA"), as amended, 29 U.S.C. § 2601, *et seq.*, and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*.

2. The unlawful employment practices of which Plaintiff complains occurred within the Eastern District of Wisconsin, and therefore venue is proper in this District pursuant to 28

U.S.C. § 1391(b).

**PLAINTIFF**

3. Plaintiff, Zeng Yang, is an adult female resident of the State of Wisconsin residing in Milwaukee County with a post office address of 7739 West Beckett Avenue, Milwaukee, WI 53218.

4. At all times material herein, Ms. Yang was a covered employee for purposes of the Family Medical Leave Act.

5. During Ms. Yang's employment, she was not a "key employee" as defined under the FMLA.

6. At all times material herein, Ms. Yang was employed by Defendant for at least 12 months prior to termination and had performed at least 1,250 hours of employment service with Defendant prior to her termination.

7. Ms. Yang began working for the Defendant full-time on or about June 29, 2015, as a Program Coordinator, mostly working on the phones.

**DEFENDANT**

8. Defendant, Centene Management Company LLC, is a domestic limited liability company doing business in interstate commerce, with a principal office address of 7700 Forsyth Boulevard, St. Louis, MO 63105-1807. Plaintiff worked at MHS Health Wisconsin, a local health plan subsidiary of Defendant, located at 10700 West Research Drive, Suite 300, Milwaukee, WI 53226.

9. At all times material herein, Defendant employed at least 50 employees within a

75 mile radius of plaintiff's work site(s).

## THE FACTS

10. Plaintiff became pregnant while employed by Defendant, with a due date of March 18, 2018. Her supervisor was Jodi Creswell.

11. At all times material herein, Plaintiff was the only pregnant member of her team at Defendant.

12. In the summer of 2017, Defendant placed Plaintiff on a special assignment, in addition to her other duties, that required her to train temporary employees. She had to spend significant time away from her desk to train them.

13. Aubrey Erkander, a coworker who was not pregnant, was also training temps at the same time as Plaintiff.

14. Ms. Erkander convinced the temps to give their completions to her and she got credit for those projects in the system as her own. This had the effect of significantly increasing Ms. Erkander's metrics and significantly decreasing the metrics of the other trainer, Plaintiff, who was pregnant.

15. Plaintiff complained to Defendant's Human Resources about this unfair situation.

16. HR told Plaintiff that they had told Ms. Erkander not to enter the completions that way, but Ms. Erkander continued to do so anyway.

17. In late July 2017, Plaintiff notified Creswell that she was pregnant.

18. On or about July 26, 2017, Creswell told Plaintiff that she would be placed on a Performance Improvement Plan.

19. Emails dated July 28, 2017 document Plaintiff's explanation to Creswell that she

3

was pregnant and required more restroom breaks than she was being given, resulting in "AUX" time that Defendant was attempting to discipline her for, despite having instructed her to use the codes that way.

20. On August 21, 2017, Plaintiff received a note from her doctor recommending that she take bathroom breaks every 2 hours for her pregnancy, as Defendant otherwise did not allow bathroom breaks that often.

21. Plaintiff provided the doctor's note to Creswell on or about August 24, 2017.

22. On or about August 30, 2017, Plaintiff inquired of Creswell about the status of her PIP.

23. The next day, August 31, 2017, Creswell changed Plaintiff's PIP to a verbal warning.

24. In December 2017, Creswell told Plaintiff she was spending too much time away from her computer because of her bathroom usage for her pregnancy and reprimanded her for it, telling her she would be placed on a PIP.

25. Plaintiff complained to Defendant's Human Resources Department at that time about the discriminatory reprimand, but they took no action.

26. Throughout her employment, Plaintiff had issues with her computer system that caused her significant lost time.

27. A significant amount of work that Plaintiff had performed did not show up in the metrics seen by Creswell.

28. After being advised of problems with her productivity, Plaintiff told Creswell about these computer issues and documented that she had actually performed the work Creswell claimed was missing.

4

29. Defendant had significant computer issues, delaying its own implementation of Plaintiff's PIP from December 2017 to January 2018.

30. In December 2017, Plaintiff also met with Defendant's VP of Operations, Linda J. Tanner, to tell her that she felt she was being discriminatorily harassed by Creswell because of her pregnancy and maternity.

31. In January 2018, Creswell unfairly put Plaintiff on a Performance Improvement Plan through April 2018, after she did not take into account Plaintiff's medical need for bathroom breaks as documented from her doctor.

32. The PIP also mentions numerous medical appointments for Plaintiff and her child, but Creswell never offered Plaintiff FMLA leave.

33. Creswell treated Plaintiff less favorably in assignments and opportunities for advancement because of her pregnancy and maternity.

34. Even in February 2018, Plaintiff still had to request additional bathroom break time, long after she was supposedly being accommodated by Defendant.

35. Plaintiff took maternity leave from Defendant beginning March 9, 2018.

36. After she had her baby, Plaintiff returned to work in early May 2018 while she was breast-feeding her baby.

37. Ms. Creswell told Plaintiff to pump on her existing breaks and provided an extra 15 minutes per day to pump, in a location far from Plaintiff's desk.

38. These measures did not give Plaintiff adequate time to pump, and again Defendant began accusing Plaintiff of falling productivity because she could not pump in the tiny amount of allotted time.

39. Plaintiff emailed her request for additional time to pump but it was denied.

40. Defendant also claims that it allowed Plaintiff time off to address her baby's health issues, but their records reflect that she was actually penalized for this time off in assessment of her performance.

41. Creswell forced Plaintiff to use her breaks to attend office luncheons and told Plaintiff that everyone had to do that, but she found out from her teammates that Creswell made only Plaintiff use her breaks that way.

42. In correspondence dated May 15, 2018, Creswell requested that Plaintiff perform duties that took time away from Plaintiff's duties on which her metrics were supposedly not being met, and for which she was fired.

43. During meetings with Creswell during Plaintiff's PIP, she always gave Plaintiff positive feedback, but at the end of the PIP, Creswell told her that didn't mean she thought Plaintiff was improving.

44. Creswell sent Plaintiff a chart purporting to show that Plaintiff had not done work that she knew she had, and in June 2018 Creswell told Plaintiff to look for the information or be fired immediately.

45. Plaintiff sent Creswell the information and was not fired.

46. On or about June 24, 2018, Plaintiff received a 2% merit increase as Program Coordinator.

47. In an email to Plaintiff dated June 27, 2018, Creswell was still penalizing Plaintiff for needing time to pump breast milk ("this report indicates 14 times that you returned late from break or lunch.")

48. Creswell extended Plaintiff's PIP for another 30 days because of this.

49. The June 27, 2018 Creswell email to Plaintiff also documents continuing

6

problems with the computer system documenting all the work that Plaintiff completed.

50. In an email dated July 19, 2018, citing continuing problems with the computer system documenting all the work that Plaintiff completed, Creswell continued to harass Plaintiff for returning late from breaks to pump.

51. Shortly before Plaintiff was fired, Creswell came under investigation by Defendant for harassment of employees.

52. Defendant's HR pulled employees, including Plaintiff, into meetings individually to ask if they had been harassed by Creswell.

53. Plaintiff reported to HR that she had been harassed by Creswell because she was pregnant and breastfeeding, but Defendant took no action to help Plaintiff.

54. Creswell called Plaintiff into a meeting with Defendant's HR at 4 p.m. on July 23, 2018. In the meeting, Defendant told Plaintiff that even though her completions looked good, Plaintiff was coming back late from breaks (where she was pumping for her baby), and so they fired her.

55. Defendant's policy says that breast-feeding is a medical condition and is to be treated as such, but Defendant did not do that or offer Plaintiff medical leave except for her maternity leave.

56. Other coworkers who had the same issues as Plaintiff did but were not pregnant were treated more favorably, and they were not fired.

57. Plaintiff did not receive termination paperwork from Defendant.

58. Instead, Defendant offered a severance agreement and told Plaintiff that she couldn't talk to anyone or go to a lawyer about what had transpired and if she signed the document, she would receive 2 weeks of pay after termination.

7

59. On or about December 28, 2018, Plaintiff filed an employment discrimination complaint against Defendant with the Wisconsin Equal Rights Division ("ERD"), designated as ERD Case No. CR201803413, and cross-filed with the U.S. Equal Employment Opportunity Commission ("EEOC") as EEOC Case No. 26G201900335C.

60. Plaintiff was issued a Notice of Right to Sue from the EEOC dated May 5, 2020 in EEOC Charge No. 26G201900335C.

61. Plaintiff has exhausted all administrative remedies and conditions precedent to bringing this action.

## FIRST CLAIM FOR RELIEF – FMLA INTERFERENCE

62. Plaintiff realleges and incorporates paragraphs 1-61 of this complaint by reference.

63. By refusing to provide Plaintiff with the appropriate paperwork to request FMLA leave from work after being notified of her serious health condition, Defendant interfered with Plaintiff's rights under the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601, *et seq.*, in intentional and/or reckless disregard of his federally protected rights.

64. As a result of Defendant's intentional violation of the FMLA, Plaintiff has suffered damages in the form of lost wages and other employment benefits and insurance.

## SECOND CLAIM FOR RELIEF—TITLE VII PREGNANCY DISCRIMINATION

65. Plaintiff realleges and incorporates paragraphs 1-64 of this complaint by reference.

66. Defendant treated Plaintiff less favorably in the terms and conditions of her

employment and terminated her employment based on sex (pregnancy and maternity), in intentional violation and in reckless disregard of Plaintiff's federally protected rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*.

67. As a result of Defendant's intentional violation of Title VII, Plaintiff has suffered damages in the form of lost wages and other employment benefits, pain and suffering, emotional distress, damage to her career.

### THIRD CLAIM FOR RELIEF—TITLE VII RETALIATION

68. Plaintiff realleges and incorporates paragraphs 1-67 of this complaint by reference.

69. Defendant terminated Plaintiff's employment in retaliation for Plaintiff's complaints of pregnancy and maternity discrimination, in intentional violation and in reckless disregard of Plaintiff's federally protected rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*.

70. As a result of Defendant's intentional violation of Title VII, Plaintiff has suffered damages in the form of lost wages and other employment benefits, pain and suffering, emotional distress, damage to her career.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

1. Order Defendant to make Plaintiff whole by providing appropriate back pay, front pay, pre-judgment and post-judgment interest, liquidated damages, and reimbursement for other benefits and expenses in an amount to be shown at trial;

2. Grant to Plaintiff her attorneys' fees, costs and disbursements as provided by 29

9

Case 2:20-cv-01122-PP   Filed 07/22/20   Page 9 of 10   Document 1

U.S.C. § 2617(3), 42 U.S.C. § 12205, and all other applicable statutes and provisions;

3. Grant to Plaintiff compensatory and punitive damages in the amount to be determined by a jury of her peers; and

4. Grant to Plaintiff whatever other relief this Court deems just and equitable.

**PLAINTIFF DEMANDS A JURY OF 12 AS TO ALL TRIABLE ISSUES.**

Dated this 22nd day of July, 2020.

                        HEINS EMPLOYMENT LAW PRACTICE LLC
                        Counsel for the Plaintiff

                        By: *s/ Janet L. Heins*
                        Janet L. Heins, State Bar No. 1000677

HEINS EMPLOYMENT LAW PRACTICE LLC
200 South Executive Drive, Suite 101
Brookfield, WI 53005
(262) 241-8444 voice
e-mail: jheins@heinslawoffice.com

10

Case 2:20-cv-01122-PP   Filed 07/22/20   Page 10 of 10   Document 1